# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and ) <br> THE NATIONAL INSTITUTES OF ) <br> HEALTH, a federal agency, *ex. rel.* ) <br> AHMED JAJEH, M.D. ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN J. STROGER HOSPITAL ) <br> OF COOK COUNTY, Department of ) <br> Medicine, BOARD OF DIRECTORS ) <br> OF THE COOK COUNTY HEALTH ) <br> AND HOSPITAL SYSTEMS, and ) <br> THOMAS LAD, M.D., Department of ) <br> Medicine, Division Chairman (Hematology ) <br> and Oncology) ) <br> ) <br>     Defendants. ) <br> ) | Case No. 13-cv-4728 <br><br> Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Dr. Ahmed Jajeh ("Jajeh"), as relator for the United States ("the government") and the National Institutes of Health ("NIH"), filed a two count complaint alleging Defendants defrauded the government and retaliated against Jajeh for opposing the fraud in violation of the False Claims Act ("FCA"). Defendants move to dismiss both the fraud and the retaliation claim. For the reasons stated below, the Court grants the motion.

**Background**

The following facts taken from the complaint are accepted as true for purposes of ruling on the motion to dismiss now before the Court. Jajeh was employed as an attending physician in the Hematology and Oncology Department at John J. Stroger Hospital ("Stroger") from December 1995 until April 2007, at which time he was terminated. Dkt. 1, ¶ 13. Dr. Thomas Lad ("Lad") was Jajeh's supervisor from at least 2004 until 2007. *Id.*, ¶¶ 19-20. During that period, Jajeh observed Lad

disbursing funds from NIH-issued research grants ("NIH funds") in a manner he believed was illegal and in violation of NIH policy. *Id.*, ¶¶ 22-33. Jajeh first complained internally and was initially unable to get a response from his superiors. *Id.*, ¶¶ 33-34. He then complained to the Federal Bureau of Investigations ("FBI") beginning in December 2005 and continuing through 2011. *Id.*, ¶¶ 33-34. Jajeh also continued to make internal complaints about Lad's use of the NIH funds, and Lad was made aware of these complaints by his supervisors. *Id.*, ¶35. Lad restricted Jajeh's access to resources, including suspending Jajeh's nurse practitioner and failing to provide a substitute, preventing Jajeh from controlling some of the NIH funds, and restricting him from other job privileges and responsibilities. *Id.* ¶¶ 41-43, 46. Jajeh believes he was subjected to this interference with his job both as retaliation for complaining about Lad's use of the NIH funds and as discrimination on the basis of his religion (Muslim), ethnicity (Arab), and national origin (Syrian). *Id.* ¶ 65. In response to the alleged discrimination, Jajeh filed an EEOC complaint in October 2006. *Id.* ¶ 38. He now brings this action, separate from his employment discrimination claim, for violations of the FCA.

**Legal Standard**

A complaint will survive a motion to dismiss under Rule 12(b)(6) if its well-pleaded facts when accepted as true and viewed in the light most favorable to the plaintiff state a plausible claim for which relief can be granted. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

**Discussion**

Defendants assert that Jajeh's fraud claim is insufficiently pled and his retaliation claim is barred by res judicata. Additionally, they argue both claims are time-barred. Finally, Defendants maintain that two among them, Stroger and the Board of Directors of the Cook County Health and Hospital Systems ("The Board"), should be dismissed because they are not suable entities. Because both the

fraud and retaliation claims are time-barred, this Court need not reach Defendants other proffered grounds for dismissal.

*1. Fraud Claim*

Defendants argue that Jajeh's fraud claim is time-barred because the FCA fraud Jajeh complains of allegedly occurred prior to June 28, 2007, six years before the complaint was filed. Statute of limitations is an affirmative defense which Jajeh need not have anticipated or attempted to overcome in his complaint. *O'Gorman v. City of Chicago,* 777 F.3d 885, 889 (7th Cir. 2015). However, if Jajeh alleges facts sufficient to establish a statute of limitations defense, this Court may properly dismiss his claims on that ground. *Id.*

The FCA provides that a relator must bring his claims within 6 years of a violation of the FCA or within 3 years of when the violation was or should have been discovered by an official of the government, whichever is later. 31 U.S.C. § 3731 (b). The three-years-after-discovery provision ("the three-year rule") is limited by the requirement that the claim must be filed within 10 years of when the violation occurred. *Id.* Courts disagree on whether a relator qualifies as an official of the government who may avail himself of the three-year rule or whether the rule only applies to the government itself when it intervenes in an FCA action. Among courts that have held the three-year rule applies to a relator, there is disagreement as to whether the relevant event marking the beginning of the limitations period is the relator's discovery of the fraud or the moment an actual government official is made aware of it. *See U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am.,* 474 F. Supp. 2d 75, 82 (D.D.C. 2007) (summarizing the competing interpretations of the three-year rule).

Here, Jajeh alleges that Lad misused funds from three specific grants, the latest of which ended in 2005. Dkt. 1, ¶¶22-29, Ex. 6-10. Scattered throughout the complaint are other allegations of fraud which do not provide a specific time period. *See, e.g.,* Dkt.1, ¶¶ 7, 33, 48, 50-55. However, it is clear from the complaint that Jajeh observed the fraud he complains of while being employed at Stroger.

3

Thus it would be implausible to infer that any allegation of fraud pertains to any time period after his termination. Because Jajeh was terminated in April 2007, the complaint contains no allegations of fraud that occurred in the six years preceding the filing of the complaint. *Id.,* ¶13.

Jajeh concedes as much in his response, which does not point to any allegation of fraud in the complaint that occurred less than six years prior to its filing. Jajeh instead suggests that the limitations period did not begin to run until after Plaintiff's last contact with the FBI in 2011. Dkt. 20 at 2. This argument is contradicted by the plain language of the statute which states that an action may not be brought "more than 6 years after *the date on which the violation . . . is committed.*" 31 U.S.C. §3731 (emphasis added). Jajeh's last contact with the FBI is also irrelevant under any possible application of the three-year rule. Assuming *arguendo* the three-year rule applies to Jajeh at all, the relevant date is either when the FBI was *first* made aware of the potential fraud, in 2005, or when Jajeh himself discovered the fraud, which Jajeh argues was "sometime in 2007-2008" when he was able to obtain documents that confirmed the fraud he suspected was occurring. Dkt. 20 at 3.

Jajeh also argues that pursuant to equitable tolling, the six-year limitations period should not begin to run until he obtained the documents he secured "sometime in 2007-2008." *Id.* The doctrine of equitable tolling "excuses an untimely filing when the plaintiff could not, despite the exercise of reasonable diligence, have discovered all the information he needed in order to be able to file his claim on time." *Carter v. Hodge*, 726 F.3d 917, 919 (7th Cir. 2013) (internal quotations omitted). However, equitable tolling "is not permissible where it is inconsistent with the text of the relevant statute," such as when the statute itself provides a tolling provision. *United States v. Beggerly*, 524 U.S. 38, 39 (1998). Here, the FCA statutorily tolls the limitations period in some instances under the three-year rule. 31 U.S.C. §3731 (b)(2). Regardless of when and how the three-year rule applies, its existence demonstrates that Congress considered the need for tolling and chose to address the matter in the statute rather than leave it to federal common law. This suggests the only tolling

available to Jajeh, if any, is that which is contained in the statute. And as discussed above, the FCA's statutory tolling provision cannot save Jajeh's fraud claim.

Furthermore, equitable tolling "does not reset the clock" and a "litigant who learns, or had he been diligent would have learned, all the facts that he would need in order to be able to file his claim while time remains in the limitations period, must file it *before* the period ends." *Yuan Gao v. Mukasey*, 519 F.3d 376, 378 (7th Cir. 2008). Here, Jajeh allegedly obtained the information needed in 2008 at the latest, with several years remaining in the limitations period. Thus, even if federal common law equitable tolling applied to FCA claims generally, it does not apply under the factual circumstances of this case.

*2. Retaliation Claim*

Defendants move to dismiss Jajeh's retaliation claim as time-barred because Jajeh has not alleged any retaliatory acts that occurred within the statute of limitations for FCA retaliation claims, which is three years. U.S.C. § 3730 (h)(3). Jajeh responds that his retaliation claim is saved by equitable estoppel.

The doctrine of equitable estoppel tolls the statute of limitations for any period during which a defendant prevents a litigant from obtaining the information needed in order to file his claim. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 385 (7th Cir. 2010). Here, Jajeh alleges he was terminated in part to prevent him from fully discovering the fraud that was occurring. Dkt. 20 at 3. However, this has no bearing on Jajeh's ability to pursue his *retaliation* claim. Jajeh's retaliation claim ripened once adverse employment actions were taken against him for investigating the fraud, even before he had all the information needed to confirm his suspicions. *Fanslow v. Chicago Mfg. Ctr., Inc.*, 384 F.3d 469, 481 (7th Cir. 2004). Thus any attempt to thwart his discovery of the fraud did not prevent him from knowing the information he needed in order to file his retaliation claim. Accordingly, equitable estoppel cannot save Jajeh's retaliation claim.

5

**Conclusion**

For the foregoing reasons, Defendants' motion to dismiss [16-1] is granted with prejudice.

    IT IS SO ORDERED.

SHARON JOHNSON COLEMAN
United States District Judge

DATED:  October 30, 2015